Case number 23-5020. Row 1 Inc. doing business as Regenerative Labs Appellants versus Xavier Becerra, Secretary of Health and Human Services, solely in his official capacity at all. Mr. Gallagher for the Appellants, Ms. Lopez for the Appellees. Good morning, Mr. Gallagher. You may proceed when you're ready. Thank you. May it please the court, Patrick Gallagher from Duane Morris on behalf of Appellants and Regenerative Labs. I deserve two minutes for rebuttal. This case is about the government's failure or refusal to engage in notice and comment in adopting a substantive legal policy for the Medicare statute. All Regenerative wants in this case is the opportunity to have that notice and comment process before enactment of a policy or regulation. Starting from the language of the statute, section 405H, Congress did not adopt a statute barring any action under the Medicare statute. I am mystified, Mr. Gallagher, by the request for rulemaking. And maybe you could help me understand just very practically what rule your client is seeking because I understand that it's the company's position that initially the February policy should have been done by rulemaking and it wasn't. But that claim, I mean, that policy, at least according to CMS, has been rescinded in their letters saying that. So surely you don't, your client doesn't want a rule saying what the initial February letters said. And since there was no such rule, they want a rule saying what the March rescission letter said, I'm just really having trouble following what rulemaking needs to be convened on the record that we now have. Understood. I think the ask is if CMS wants to adopt a rule like was adopted in the two February TDLs, at that point, notice and comment would be required. But that's, right, that's not happening. I mean, that's not, so effectively it's, and this is what I was wondering, it sounds like what your client wants is to petition for a rulemaking saying something else, saying categorically this product is a, what is it? A 361, not a 351. But that's up to the client to ask you to do a petition for rulemaking. That doesn't seem like relief in this case. So I think, and this is at paragraphs, from paragraphs 106 through 123 of the verified amended complaint, amended verified complaint, the policy has not been. And I understand that there's a technical direction letter, the two technical direction letters initially from February for the improper adoption, reflecting the improper adoption for substantive legal policy under the Medicare statute. And I understand that there's a March letter rescinding those TDLs, but from Regenerative's perspective, and at paragraphs 106 through 123, it's very clearly alleged that the substantive policy has not actually been rescinded. Nothing has changed. That's a request for declaratory relief. That's what we're asking, to vacate the policy. Not just have this March, this 3rd, March 2022 TDL purporting to rescind the two prior TDLs, but to actually vacate the policy, which is still happening. The products, so- I understand your theory about the de facto policy or the stealth policy. And I guess I'm not satisfied, but I will be satisfied with the extent of your answer on what a rule would look like. I can't really envision a rule that says, hey, that policy that we announced in some TDLs back when, we really mean it, that that's no longer the policy. Like, I've never seen a rule like that. Understood. We're not asking for that. What are you asking for? What would be the content of the rule? We're not asking that there has to be a rule. We're just saying, if they want to adopt a rule, they- That's the advisory opinion in some general worlds. You have to wait until they've promulgated something by the next letter and say, again, as we said last time, with actually good effect, you can't do it that way. I think that's the problem, is that they, without going through notice and comment, have adopted this substantive legal policy, which is completely against Azar violina and the requirements for notice and comment under the Medicare statute and the APA. That policy, the policy reflected in those two initials TDLs is still in place. And so we're not- If we were convinced there was a, a sort of under the waterline policy, I can't really imagine this court saying, hey, promulgate that policy by rule. I think we would have to say, you can't conduct an under the waterline policy. So let's set aside the rule question for now. And your argument that there's no requirement to present the claim to the agency, including to wait for a proxy, someone who wants reimbursement to present to the agency. That's the gravamen of the rest of your complaint. That is a second part of the argument. So under the Illinois Council exception, where a claim would be, an action would be completely precluded from judicial review. And that includes that there's no adequate proxy. There's two reasons there's no adequate proxy here. First, just the fact that nobody knew about these TDLs until Regenerative filed this lawsuit. So providers who are in a specific geographic location are looking at their own MAC or their specific region. These statements start coming out on the internet that look like informal guidance. It does not look to any of them like something that is an edict from CMS, a direction from CMS nationwide. Regenerative through interactions with contributors, interactions with providers, and some interactions with MACs and looking at what the MACs were putting on in the internet suspected that there was more to the story. And so filed the initial complaint in the middle of March of 2022. And it was only after that complaint was filed that the TDLs came to the court. Second point is providers and beneficiaries do not have the same ability and willingness to pursue this claim related purely to process that if the government wants to promulgate a policy, they need to go through notice. And in fact, in the manner in which these statements have come out from the MACs, calling into question the safety and effectiveness, improperly calling into question the safety and effectiveness of Regenerative's products and going so far as to suggest they're perhaps illegally marketed. Providers have zero incentive to push back against CMS. They go to other treatments and others. But as I understand the CMS, what you allege to be the CMS de facto unstated policy contrary to their retraction letter is something that applies categorically to this whole class of products. It applies categorically across this whole class of products. So when you say someone would substitute, they would substitute a product that is not one of these. Correct. So by way of example, this policy impacts amniotic and placental tissue-based products, HTTPs. Providers can look to cortisone shots, anti-inflammatories, and surgery. Surgery is an alternative that providers look to. Surgery costs 10 times more than this. Providers, orthopedic surgeons have no problem doing surgery if Medicare is telling them you can't use these products. Isn't there a case pending right now where there is another party pursuing the claim that you'd like to pursue? You're saying that part of your argument to deal with the no review at all test is that there isn't anyone else who has an incentive. And yet there is a case now with someone on your side of the claim saying exactly what you said, no one would have the incentive to pursue. So I mean, that's evidence against your position, isn't it? I don't believe so. I'm confused about the discussion so far. I didn't think this was about notice and comment so much as we should be able to get past this block on the agency's enforcement type action. In other words, the agency taking an action that adversely affects us. So in the traditional sense, we have standing because we're the ones who are really hurt. The problem with you is under the statute in the case law, we've said if it's under the Medicare Act, unless you can show you have no way at all, you can't raise the claim, right? I mean, isn't that? No, so if I can address your first question, I think you're referring to the STEM labs case where they do have a provider and they are pursuing a different claim. You're saying they're not raising all of what you'd like to raise. They're not raising the specific cause of action that we are raising and the reputational harm that Regenerative has had. You've got a statutory bar against your being, excuse me, being able to challenge the way you'd like to be able to challenge. I don't believe there is because the language of section 405H is limited to a cause of action to recover on any claim. And under Illinois Council, just as prior, was very, very careful to page 14 of the opinion, go through the types of actions to recover on any claim. It included claims for money, claims for other benefits, claims for program eligibility, claims to contest a sanction or remedy. That's what was at issue in that specific case. 405H doesn't apply if it would mean no review at all. That's what you're fighting. That's the Illinois Council exception. Yeah, go ahead. But I think additionally, Illinois Council has never, does not go so far and can't because it's not what the statute says, is to say any cause of action under the Medicare statute is barred. It has to be a cause of action to recover on any claim. And Justice Breyer's list, and he's very careful, and he had four colleagues who thought that in that case, they were going too far in applying this bar. It's limited to causes of action where it's talking about the, what you're getting at is the payment of money. And what we're asking for is just the opportunity for notice and comment, if the government chooses to implement it. You're arguing not that the contractors are misapplying the reasonable unnecessary standard. You're arguing that in fact, they're just automatically denying all the claims. That is correct. And that's paragraph, again, paragraphs 106 to 123 of the amended verified. And the most plausible factual allegations for that are what? So there are specific examples that have been pled where MAC representatives said that it is automatic. And that was very soon after the rescission letter. In the period of time since then, is it your position that zero reasonable unnecessary determinations have been made? Since the time of the amended, nothing has changed. It is still automatic. So there's been no case in which Regenerative's products have been deemed by CMS to be reimbursable. And that is the problem. And they issue the requester some documentation for that effect, not reasonable unnecessary. When they make that determination, when somebody submits and they make a determination, sorry, we're not gonna cover that. So you make an allegation and you refer to it in your brief that one can't even tee up a proxy claim because nobody's giving the requisite paperwork. I wasn't sure what paperwork you were referring to that. I'm sure that's my unfamiliarity, not the inadequacies of your. So I think at this point after, at this point, after the policy has been put into place and is in place, providers are not submitting claims. Not what? Submitting claims. They're not submitting claims for reimbursement. But nobody anywhere is even trying to use this product. Well, that's not true. There's cash pay people. You have the one claim that I mentioned, you agree it's inaction. I mean, that's part of, that's the inconsistency with your argument. There is someone pursuing a claim. That is consistent with your theory, at least in part. They are. So in the Stimlabs case, Stimlabs has sued and they have a provider who is a co-plaintiff with them. And I understand in that case, and I don't represent Stimlabs, I am not sure what they're going for, but I understand in that case, the provider could go through the administrative appeals. What we're asking for is something different. And the providers do not have the incentive to pursue this claim, which is purely about process, notice and comment. For future claims, they're not going to use it. Medicare has told them to do something else. And there's other treatments such as cortisone shots, anti-inflammatories and surgery that they will use instead. And for past claims, all they're asking for is, please forgive me and pay me because I did not know and could not. The reason they didn't know and couldn't know is because the policy wasn't announced in advance, just substantively everything changed. You just said your- I have a couple of questions about the proxy issue. In the case of RICU v. HHS, didn't they reject the argument that some risk providers might switch products? Does it mean that there are no proxies? Well, in RICU, RICU was about telehealth services where they were being provided by internet doctors internationally and overseas. In that case, it went through the entirety of notice and comment. After Congress authorized the expansion of telehealth services under Medicaid, the agency published an interim final rule at a comment period, considered those comments, offered reasons responses, published a final rule, and then implemented the final rule. With respect to the proxy issue, so that makes it entirely different from this because we only know about the policy and the TDLs because of the lawsuit. That's how we got the first two TDLs, by filing the complaint. And additionally, with respect to the proxy issue in RICU, RICU admitted that hospitals wanted the services to be covered, and we're reaching out to see if the services could be covered. In this case, because of the manner in which the MACs publicly have put out there, improperly and incorrectly, that these products are not safe and effective, it may be illegally marketed, no provider wants to touch that. It's like a scarlet letter that's been hung around the- And then just a couple more questions. What about Granite, what the products, orthopedics, excuse me, would they be an adequate proxy? No. And why not? They don't have the incentive. And again, in STEM labs, and I don't know that they have,  but they don't have the incentive to ask for this specific relief for if you wanna go through and implement this policy or a policy like it, just publish it first, and let Regenerative defend its products. Granite doesn't- Why don't providers have an incentive to raise a notice and comment claim? They don't have the same ability and willingness to pursue it, because this is existential to- Well, I guess what I'm getting at is, are you telling me that that ability for a proxy has to be right now in this moment in time as we are deciding this case, or, and all we have to do is look at their ability, that there is someone out there, or that there has to be a case filed right at this moment to determine whether or not you have a proxy? I'm not saying that there has to be a case filed right at this moment, but you have to look at, from a practical perspective, that's counsel for your logical interest, from a practical perspective, look at, do they have the same incentive, the same ability and willingness to pursue this? And a provider- Is that a claim that you have? In other words, you're looking for someone who could essentially stand in your shoes, it has to be on all four for us to proceed? They can't stand in our shoes, but from a practical perspective, why would a provider, who their goal is to treat their patients, to serve their patients, and as they can to get Medicare reimbursed, when the MACs have put out at the direction of CMS, the statements that these products, these types of products may not be safe and effective and may be illegally marketed, why would any provider try to defend that instead of going to alternative therapy? Well, in Kriner, the providers are arguing for notice and comment, and they are seeking declaratory injunctive relief, which is what you're arguing for. It's a different incentive to pursue- Different because it's not you, but I mean, that doesn't seem to me to be enough of an answer. Yeah, it's different, it's them, not you, but they're asking for the same thing you're asking for, which is counter to your argument that there isn't anyone out there who will ask, well, notice and comment is the best example. They're asking for notice and comment about the matter that you're concerned about. So it's the same ability and willingness to pursue it, and providers do not have that ability. As a general proposition, that's- As a general proposition in this case- Did you- I'm sorry, I am interrupting you and I apologize. Did you ever file a request for notice and comment rulemaking with the agency? We did not, and there was no reason to, because before this policy was implemented sometime around the end of 2021 or early 2022, under the Medicare statute, the claims were being processed under the normal procedure on a claim-by-claim basis, under the test whether the care provided was reasonable and necessary. And there was no- At that point, there was no need- But there's been time since then, once you figured out what was going on. I'm really- As a procedural matter, it's a little perplexing. In a normal agency situation, if you think an agency's acting pursuant to a rule that is either impermissible or was not properly promulgated, you would ask for notice and comment rulemaking, set up the case that way. Is there some reason you couldn't have done that here? You didn't, you said. We didn't, and- Is there some reason you couldn't or can't? We couldn't. In other words, your argument is you've adopted a policy, you clearly have it in play, and we want notice and comment if you're going to follow this policy, because we clearly have standing because you're affecting our product. Now, you have never made that claim, and you walked right into a potential bar under the Medicare Act, under the statute that we've been talking about. Why didn't you ask for notice and comment rulemaking? I think the important point of what you said is if. If they pass a rule, Regenerative would be more than happy to go back to before the policy was implemented, where each claim- But your premise is they do have the policy. That's the reason you would assert when you were asking for notice and comment, and then the agency has an obligation to respond. Now, they may say, we're not giving it to you because we don't have a policy or whatever, and then you would have review on that. That's in the normal case. You would be able to get review and say their denial. It's a tough standard review. Their denial of our petition for notice and comment rulemaking is bogus because they do have a policy. And they are enforcing the policy adversely to us. And we can't otherwise get in through the Medicare Act because of the way the statute's written. Now, you don't want to make that argument, but you can certainly advance it and say, it appears we may not be able to get in through the Medicare Act. We have to challenge it this way, and this isn't fair. I don't understand why that course of action isn't being pursued if your claims are correct. Because we don't necessarily want a policy implemented the way it was before it was fine, when it was on a case-by-case basis. I understand, but the argument would be then, whatever it is you're doing, there should be a policy that you shouldn't be doing that or a rule that you can't do that. In other words, you haven't put it in play in a way that seemed obvious to me. But that's what I'm curious. So on the question of whether there are any determinations that have been a result of agency presentation and decision about whether the treatment is reasonable and necessary, there's the whole category before the February letters went out that then they said, you know, deny that. And then they changed their mind. Like there were things in the pipeline. And even if someone is a private payer, and I don't, you may know the answer to this, I don't. I know if you're under insurance that you submit even for things that you're not gonna get coverage for because you deductibles and stuff like that. And so people have incentives, even who can afford it to try. The incentive is to try and get the claim paid. Yeah. Incentive is not to challenge the notice and comment and say, if you want to adopt this policy CMS, you need to take it through notice and comment. And that's where the provider- Had some skill in it. It was part of their business. You're saying they just, nobody cares about it enough. They just walk away. Their incentive is to try and get, so for the instances where they use it, because there certainly were instances where before they knew that this policy was being implemented, it was being used, and then those claims were denied. And then nobody's been in touch with them to say, actually now it's back to the way it was. Well, it's not back to the way it is. They've said formally that it is, and that's something you want them to hold true to. So do they not know that at least facially, CMS has said we're actually doing case by case reasonable and necessary? So I believe they know that, but they know that the policy is still not to,  And in part, that's, you know, paragraphs 106 to 123 of the complaint, providers tend to be cautious about these types of things. Many were cautious initially, but then before they jump back in, they reach out to the MACs to see how will this be handled? And what they've been told is it will be automatically denied. I mean, your incentive argument is, it's not unstrong. I don't know. That's not, you understand the concept. It's a compelling type of an argument because you're the one who's directly taking the hit and you may or may not have other folks in the market who will pursue the claim, I understand. And apparently, and I can see why a lot would not if there are alternative products. If there's somewhere else they can go, why are you gonna fight over reimbursement for your product when the agency's not gonna pay it? That's what you're saying, right? Yes. Yeah, I mean, that's a compelling argument to me. It's like, why am I gonna waste time? If there's medicine B instead of A, I'm not gonna fight for reimbursement on A, I can go to B. And that's what you're saying. We're the ones being damned and the agency says it's changed, but it really hasn't. But I still come back to, I don't understand why you haven't attacked the failure of rulemaking in the direct way in which it is often done because that's what you're claiming. There is a policy that has become de facto a rule that's impermissible in the normal course and we wanna challenge it, but there's a way to do that and you haven't done it. And you walked right into the Medicare Act's bars, which are very difficult. You're straining to make arguments, whether you can find proxies and all the arguments we've been talking about today. And there's another course of action you haven't taken. And all I can say is, again, I think they don't necessarily, Regenerative does not necessarily want to rule. It's only if the agency wants to implement the rule. And I think this case falls fairly under this court's holding in National Association of Home Health Services, which clearly said in interpreting the statutory language, recover on any claim under the Medicare statute that doesn't apply to causes of action that are to rectify early procedural irregularity. That decision predates Heckler and is- It does. Of a vintage that one questions that every jot and tittle of what it might be taken to support is actually supported. I understand the timing of it, but that line of cases, Heckler, and then ultimately Illinois Council are all addressing causes of action that ultimately are about payment of money. All right. It'll just take me a moment. Before you proceed, just on that last thought in Illinois Council, wasn't there notice and comment raised? I'm directing this to you. Yes, sorry. I just wanted to have made, and Carolyn Lopez on behalf of the government. Yes, Your Honor, that was at issue in Illinois Council. And actually more specifically, I think one of the best sites for this is in the Ringer case at pages 614 to 6- In the one case, I didn't hear you. Oh, Heckler versus Ringer. At pages 614 through 615, Ringer court expressly says one of the claims that is being brought could be conceived of as procedural and that the secretary should have issued the instructions of the notice and comment rulemaking. And in Ringer, the Supreme Court squarely held that that was the sort of the procedural substantive labels don't matter. Those all are subject to Medicare channeling. And that really does tie back here. When you look at the complaint, so the Ringer language is this inextricably intertwined language, which of course this court is well familiar with the Medicare channeling and the preclusion of review provisions. When something is inextricably intertwined with the agency action that requires, in this case, channeling, you can't forego channeling. And here, the complaint really makes quite clear that it is inextricably intertwined from start to finish. So the injury is that now many providers aren't being, allegedly now that many providers are no longer being versed for regeneratives products. That's JA 132, paragraph 135. And then the so-called procedural challenge also is quite clear at bottom about reimbursement. So there, JA 134, paragraph 141, the description of the challenge is that the problem is that there was, quote, a blanket denial of coverage for regeneratives products without proper rulemaking. So quite clearly, inextricably intertwined again. And then as we've been discussing today, of course, the relief that they asked for is a request to vacate the policy, which separately, as we've been discussing today, is moot because the policy is no longer extant as per the third letter. And to seek a declaration, and this is at JA 135, that regeneratives products, quote, should be reimbursed. And so quite clearly, this is all part and parcel with the reimbursement question. Ms. Lopez, does the government have any role or any burden to show by affidavit or otherwise that adequate proxies do exist once regenerative has alleged that circumstances that they believe and that, let's just take for purposes of the question, that support the notion that there are no, nobody has the incentives aligned with theirs to pursue a claim? So I wanna be very careful here to caveat what I'm saying, which is to say that it is true under counsel for urological interests that in the rare and in what this court described as unique circumstances in which there have been sufficiently specific allegations that the beneficiaries and providers interest are sort of diametrically opposed to that of the council's members. So there, and this is at page 713 of that opinion, they are that was satisfied because they said, there were specific allegations that said, in fact, the hospitals that would otherwise bring the claims were affirmatively benefited from the regulation. So they got to buy these materials from the council's members at buyer sale rates, and they got to, and they got, the hospitals regained control of this procurement process, which otherwise the council's members had had charge of. And then the court coupled to that with the fact out there in the world that there had been no claims brought by hospitals in three years. And they are, and it's only in that, again, what this court calls unique circumstances, that the court found that in that circumstance, the council had met its sort of initial burden, even an allegation. So I'm aware of how the circumstances in that case were very strong in favor of no proxies. And it may just be that this is the result of the bar in the statute, but the product inventor or purveyor of a product that has been, let's say, has been viewed as very beneficial and then by, erroneously, the government describes it as hazardous. And then a few days later, oh, I'm sorry. No claim if, and also assume people are very sensitive to risk and they just shun the product. And nobody's, there's no proxies because nobody's interested. It's died on the vine. Your Honor, even at the motion to dismiss stage, it's regenerative's burden to provide specific allegations in its complaints that that is true. And they simply haven't done that. So if I could just sort of- I think they have. That's exactly how they characterize the situation. And so the shortcomings that you would point to in particular are- Are the following. So first, although they sort of posit generally that because their products haven't, that because of the original denial letters, which again were rescinded. So we are not in a world in which those statements are still out there as CMS's statements. So they sort of allege reputational injury there, but that's already been taken back. Just a question of practicality. How does the rescission, is that posted somewhere online or how do people learn of that? How do potential medical providers who had previously been using these therapies and then stopped, how are they told? Oh, nevermind. Yes, Your Honor. So I want to be a little bit careful here because I'm not exactly sure how the public posting worked. Originally these letters actually were just between CMS and the Medicare contractors. So they actually weren't public at all. And it's the Medicare contractors, public statements that were out there. These technical direction letters actually only were released to the public as part of legitimates litigation. And so it's sort of a little bit funny to then- And presumably the retraction is also- Was also part of that public record and part of that litigation record. And again, that third letter instructs that Medicare contractors who had posted notice to folks that they were going to stop reimbursing for these types of products. They told, they instructed the Medicare contractors to remove any of the policy, their policy language, and also to rescind any educational materials that might've sort of been along those lines. And then, so just to return to Your Honor's question about sort of why the government thinks that a regenerative's complaint doesn't meet that really high thresholds met in counsel for urological interests, which is sort of the trigger for when the government may in those unique circumstances need to submit a declaration. So it's entirely within regenerative's own knowledge whether or not providers have in fact stopped purchasing their products. And you'll notice that nowhere in the complaint do they say that. In fact, at most, they say many providers will stop. Not all providers will stop. And the Medicare channeling, the exception for the no review is quite narrow. It's not that you might lose some providers who might be interested in using your product. It's that it's become highly unlikely that this is going to get channeled. And do you know that it's- Do you know whether, I mean, I know it's not in the record, but how are we supposed to, what assumptions should we have about whether zero claims have been submitted to be reviewed? So, yes, Your Honor, two responses to that. The first is, yes, it is out of the record, but since Your Honor has asked, I know that there are currently pending administrative claims involving regenerative products. And then more broadly, as this court's case in RICU makes clear, it's not CMS's burden at this stage to show that there's currently an actively pending administrative claim. So in RICU, as is made quite clear in the oral argument audio, there were currently no pending administrative claims. And that wasn't sort of a bar to the general notion, which is the default rule that usually one thinks that providers and beneficiaries who have been using a product will be generally aligned with the providers and suppliers who make that product continuing to seek reimbursement. Again, unless you sort of change as something that makes their interests diametrically opposed in the way that it was for counsel. Let me see if I can, I'm really, this case is looser than it should be in my mind. Take this situation, I'm trying to make it as stream as I can to see what your position is. Secretary announces, Company X has this medical product. I am sending a notice to all Medicare providers, contractors, you are not to do anything to facilitate reimbursement for this product at all. I wanna make that clear, that's policy and you should adopt it. And then all of those who might pick it up in the market somehow let the Medicare providers know, we understand we will not in any way even seek to use this product. Now is the offended party, does the offended party barred because there's no channeling? Does the offended party have an action to say, this is a policy that really should have been adopted by rulemaking and there's a failure here and I'm pursuing a request like in Perez, just as Supreme Court said, it's rulemaking and you can't do it this way. Yes or no? Your Honor, I wanna make sure that I understand the parameters. Make it as extreme as it can. Okay, so the parameters of the hypothetical that I'm taking just so that I'm crystal clear are that there is an announcement from the secretary that says, do not reimburse these products anymore in any way that's announced to everybody publicly. I don't want it in the market. I wanna make it as extreme as, I don't like this product. I don't want it in the market nor in reimbursement and any of my contractors who do it will no longer be contracted. And in your hypothetical, right, but the key question is whether there are still, even in that hypothetical, whether there are still providers. No, and I agree with that part of the hypothetical. I suppose potential providers confirm with the contractors we understand it'll not happen. It's done. So in that sort of extreme hypothetical, assuming some time has passed as well, then we may be in this very narrow Council for Urological Interest case in which the court said at that point, CMS might have to come forward to say, actually, we've talked to some providers who do still plan to do that, but that's absolutely not what we have. Again, I wanna make sure I'm understanding how you're setting this up. So your council, forget you're representing the government today, your council for the offended party, and you say, okay, the way we have to attack this is what? What would your advice be? We petition for rulemaking. What would your advice be? Well, your honor, I'm afraid I can't take off my government hat, but- No, no, I'm being deadly serious. I need to understand the parameters. I need to understand the limits of your- Sorry, your honor, well, so they could do what Stimlabs has done, which is to coordinate with the providers and providers and beneficiaries who are filing claims and doing exactly what you're supposed to do in Medicare channeling, which is to present these issue in concrete claims. So in Briner's, we've been discussing earlier, there's the exact challenge that the plaintiffs in that case say that there's a shadow policy and that it hasn't been issued by rulemaking and then it needs to be issued by rulemaking. So we know from the context of this particular case that it's possible to do those things. So Virginia- They're in a tough position. I'm sorry for interrupting. They're in a tough position because what they're saying is you've done a thing by rulemaking, not by rulemaking that should have been done by rulemaking. We have zero interest in a rule. So we can't say, if you're gonna do that, you have to do it by rulemaking. That's not in our interest. What we want you to do is make a rule saying we did a 180 and then another 180, therefore public, please understand that you should treat the status of these therapies the way they were treated before the, what are they called? Technical direction letters, the TDLs, before the TDLs. But Your Honor, the third technical direction letter already does that. This is a case that's classically moved. What I hear them saying that is, we're all like this. Somebody tells you, oh, don't go to that doctor. That doctor's an ax murderer. And you think, what are the chances? But you also think, I'm gonna pick a different doctor. There's just a way in which once the doubt is sown, it is hard to un-sow. And they can't sue the government for affirmation or interference with, you know, towards this interference with business relations or anything. So. But Your Honor, the answer to that isn't to file an advisory opinion that says maybe you shouldn't have issued those technical direction letters without notice and comment in the first place. I mean, the boundaries. I didn't hear you, I'm sorry. The answer to that is not to file an advisory opinion saying you shouldn't have issued those first two technical direction letters without notice and comment. The agency has already provided all the relief that might be available. And that's just sort of the limits of Article III jurisdiction. And again, if Regenerative thinks that there's still some sort of secret policy that's actually being applied on a case-by-case basis, we're squarely within Medicare channeling. And again, we know, although not necessary, we know from the Griner, the currently pending Griner litigation, that there are folks making these exact same types of arguments. If there are no further questions, we'd ask that the Court affirm. Thank you, Ms. Lopez. Mr. Gallagher, you have a minute for rebuttal. Thank you. I will be quick. On the proxy issue, the allegations at paragraphs 123 to 126 of the complaint go through what we've been discussing about there being known that not the same incentives. We are entitled to inferences from those, and they are the only facts that are in the record. Additionally, on the point of the proxies that Regenerative or manufacturer should somehow coordinate with a provider, that type of coordination would violate anti-kickback statutes and any number of other statutes that prevent manufacturers from giving healthcare providers or beneficiaries those types of monetary things. So we can't coordinate with them and suggest pay their legal fees. Just to be clear, I don't think the proxy analysis assumes that anybody would be paying the proxies. It's a question of whether it would be in their aligned interest to pursue on their own. Understood. I think the provider doesn't have the same incentive, ability, or willingness to pay legal fees to go through the process for this specific relief. Understood. Thank you. Thank you. The case is submitted. Thank you very much.
judges: Pillard, Childs, Edwards